IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| JOHN PURCELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:21-cv-11034 |
| | ) | |
| v. | ) | |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the plaintiff, JOHN PURCELL, by and through his attorneys, Anderson Clarkson Johnson Brown PLLC, and for his Complaint against the defendant, CAVALRY PORTFOLIO SERVICES, LLC, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. JOHN PURCELL, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Philadelphia, County of Philadelphia, State of Pennsylvania.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. CAVALRY PORTFOLIO SERVICES, LLC, (hereinafter, "Defendant") is a business entity engaged in the collection of debts from consumers within the State of Pennsylvania. Defendant's principal place of business is located in the State of New York. Defendant is incorporated in the State of New York.

7. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

## IV. ALLEGATIONS

8. As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

9. Prior to October 17, 2019, Plaintiff had an account with Citibank.

10. Upon information and belief, the account Plaintiff had with Citibank was for a credit card.

11. On October 17, 2019, Plaintiff filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 19-16530-JKS.

12. At the time Plaintiff filed his Bankruptcy Petition, he owed a debt to Citibank (hereinafter, "the Debt").

13. The Debt was assigned to and/or purchased by Defendant for collection from Plaintiff.

14. Plaintiff scheduled the Debt in his Bankruptcy Petition.

15. At the time Plaintiff filed his bankruptcy petition, he owed no other debt to Citibank.

16. At the time Plaintiff filed his bankruptcy petition, he had no other accounts with Defendant.

17. On or about January 30, 2020, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing his liability for the Debt (hereinafter, "the Discharge Order").

18. When the Bankruptcy Court entered the Discharge Order, the debtor-creditor relationship ended between Plaintiff and Defendant as to the Debt.

19. Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

20. Given that Plaintiff's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Plaintiff had no assets in his estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of his Bankruptcy Petition.

21. The Debt, and any other account(s) Plaintiff had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Plaintiff filed his Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

22. On or about February 1, 2020, the Bankruptcy Court served a Certificate of Notice on Defendant, which included a copy of the Discharge Order.

23. As of February 1, 2020, Defendant was effectively put on notice that any debt incurred prior to the filing of Plaintiff's Bankruptcy Petition was discharged.

24. Defendant was aware that any debt incurred by Plaintiff prior to October 17, 2019, which was assigned to Defendant for collection, was discharged in bankruptcy.

25. At the time Plaintiff filed his Bankruptcy Petition, Plaintiff was unaware to whom the Debt was originally owed, however, Plaintiff scheduled the aforementioned debt in his Bankruptcy Petition as an unsecured debt.

26. At no time since January 30, 2020, has Plaintiff owed any debt to Defendant.

27. At no time since January 30, 2020, has Plaintiff opened any accounts with Defendant.

28. At no time since January 30, 2020, has Plaintiff had any personal business relationship with Defendant.

29. Given the facts delineated above, at no time since January 30, 2020, has Defendant had any information in its possession to suggest that Plaintiff owed a debt to Defendant.

30. Given the facts delineated above, at no time since January 30, 2020, has Defendant had any information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

31. Trans Union, LLC (hereinafter, "Trans Union") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f).  Trans Union is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

32. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records

of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

33. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970, Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only. See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

34. The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also*, *United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

35. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

36. Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

37. Defendant is a subscriber and user of consumer reports issued by Trans Union.

38. Defendant also furnishes data to Trans Union about its experiences with its customers and potential customers.

39. Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

40. Defendant has a symbiotic relationship with Trans Union such that it furnishes information to Trans Union regarding its transactions and/or other experiences with consumers while also purchasing from Trans Union information about its customers and other consumers.

41. On or about February 8, 2021, despite being cognizant of the facts as delineated above, Defendant procured from Trans Union a copy of Plaintiff's consumer report at which time Defendant made a general or specific certification to Trans Union that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

42. The certification made by Defendant to Trans Union was false.

43. Despite certifying to Trans Union that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

44. At no time on or prior to February 8, 2021, did Plaintiff consent to Defendant obtaining his consumer report.

45. On or about February 8, 2021, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report.

46. On or about February 8, 2021, at the time Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

47. On or about February 8, 2021, at the time Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

48. On or about February 8, 2021, at the time Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report, unknown employees, representatives, and/or agents of Defendant viewed Plaintiff's Confidential Information.

49. On or about February 8, 2021, at the time Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

50. Plaintiff has a right to have his Confidential Information kept private.

51. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides his consent for the release of the information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

52. Defendant procured from Trans Union Plaintiff's consumer report without his knowledge or consent.

53. Defendant procured from Trans Union Plaintiff's consumer report without a permissible purpose.

54. By its actions, when Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

55. By its actions, when Defendant impermissibly procured from Trans Union Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

56. When Plaintiff discovered that Defendant had procured his personal, private, and confidential information from Trans Union, Plaintiff was extremely angry, frustrated, and suffered emotional distress resulting from Defendant's invasion of his privacy.

57. When Plaintiff discovered that Defendant had procured his personal, private, and confidential information from Trans Union, Plaintiff was extremely worried, concerned, and frustrated that Defendant's impermissible access of his personal, private, and confidential information from one or more consumer reporting agency could continue indefinitely.

58. When Plaintiff discovered that Defendant had procured his Confidential Information from Trans Union, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

59. When Plaintiff received his Discharge Order from the Bankruptcy Court, he rightfully believed that his business relationship with Defendant had come to an end. When Plaintiff discovered that Defendant had procured his Confidential Information after it had been sent notice of Plaintiff's bankruptcy discharge, Plaintiff believed that Defendant would continue to act with impunity and continue to procure his Confidential Information indefinitely.

60. The actions of Defendant caused Plaintiff to suffer from frustration, anxiety, and emotional distress that manifested itself such that: (i) Plaintiff had difficulty falling to sleep and/or staying asleep; (ii) Plaintiff had a loss of appetite.

V. **JURY DEMAND**

61. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JOHN PURCELL, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a. All actual compensatory damages suffered;

b. Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

c. Punitive damages;

d. Plaintiff's attorneys' fees and costs; and,

e. Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**JOHN PURCELL**

By:    s/ Adam C. Anderson
      Attorney for Plaintiff

Dated: December 23, 2021

Adam C. Anderson (Bar No. 4151593)
Anderson Clarkson Johnson Brown PLLC
2812 N Norwalk # 106
Mesa, AZ 85215
Telephone:   (480) 272-5983
Facsimile:   (480) 522-3649
E-Mail:   aanderson@acjblaw.com